IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-00223-RN

**Ramiro Roman Ruiz,**

        Plaintiff,

v.

**Andrew Saul,**
Commissioner of Social Security,

        Defendant.

**Memorandum & Order**

      Plaintiff Ramiro Ruiz instituted this action in May 2018 to challenge the denial of his application for social security income. Ruiz claims that Administrative Law Judge ("ALJ") Vanessa Lucas erred in (1) failing to account for his mental impairments when determining his residual functional capacity ("RFC"), and (2) applying the Medical-Vocational Guidelines ("Grids"). Both Ruiz and Defendant Andrew Saul, Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 26, 30.

      After reviewing the parties' arguments, the court has determined that ALJ Lucas reached the appropriate determination. ALJ Lucas correctly considered Ruiz's mental impairments when determining the RFC. And she applied the appropriate Grid Rule at step five. The undersigned magistrate judge denies Ruiz's motion, grants the Commissioner's motion, and affirms the Commissioner's determination.[1]

---

[1] The parties have consented to jurisdiction by a United States Magistrate Judge. 28 U.S.C. § 636(c). D.E. 23.

## I. Background

In September 2014, Ruiz filed applied for disability insurance benefits, alleging a disability that began in December 2012. After his claim was denied at the initial level and upon reconsideration, Ruiz appeared before ALJ Lucas for a hearing to determine whether he was entitled to benefits. ALJ Lucas determined Ruiz had no right to benefits because he was not disabled. Tr. at 12–22.

ALJ Lucas found that Ruiz had several severe impairments including: degenerative disc disease of the cervical spine, chronic low back pain, left shoulder bursitis/degenerative joint disease, with a history of rotator cuff repair surgery, Achilles tendonitis and pes planus of the bilateral feet, and obesity. Tr. at 14. ALJ Lucas also found that Ruiz's impairments, either alone or in combination, did not meet or equal a Listing impairment. Tr. at 17.

ALJ Lucas then determined that Ruiz had the RFC to perform a full range of sedentary work. Tr. at 18. ALJ Lucas concluded that Ruiz could perform his past relevant work as a general operations agent and security officer. Tr. at 22. Thus, ALJ Lucas found that Ruiz was not disabled. *Id.*

After unsuccessfully seeking review by the Appeals Council, Ruiz commenced this action in May 2018. D.E. 1.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to determining whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning

mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The court must affirm the Commissioner's decision if it is supported by substantial evidence. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson* v. *Barnhart*, 434 F.3d 650 (4th Cir. 2005). The ALJ must consider the factors in order. At step one, if the claimant is engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. But if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background[2]

Ruiz served about 20 years in the Army. Tr. at 481. He has a history of mental health conditions, including diagnoses of post-traumatic stress disorder ("PTSD"), headaches, dementia, and depression. Tr. at 14.

In 2005, the Veterans Administration ("VA") determined that Ruiz had a 30% disability rating for PTSD and depression.[3] Tr. at 192. The VA later increased this rating to 50% based on suicidal ideations, memory impairment, occupational and social impairments, anxiety, depression, and sleep disturbances. Tr. at 193.

In June 2011, John Bolger, Ph.D., conducted a consultative psychological examination. Tr. at 15. Based on testing results, Dr. Bolger found little evidence of a neurocognitive dysfunction. *Id.*

Mental status examinations between 2012 and 2014 reflect that Ruiz had a withdrawn mood, constricted affect, and reported auditory hallucinations. Tr. at 510, 518, 548, 572, 592, 616. In July 2014, Ruiz presented to the Emergency Department of Womack Army Medical Center complaining of memory loss, which later resolved. Tr. at 280, 283.

Four months later, Dr. Muhammad Khasru, a neurologist, found Ruiz had abnormal critical function and diagnosed him with PTSD and dementia. Tr. at 663. Dr. Khasru added another diagnosis, unspecified cerebral artery occlusion with cerebral infarction, in February 2015. Tr. at 785. Dr. Khasru assessed similar findings and diagnoses at follow-up visits in March 2015 and September 2016. Tr. at 787–88, 790–91.

---

[2] The court limits its discussion of Ruiz's medical history to his mental health background because the parties' briefs do not challenge ALJ Lucas's consideration of Ruiz's physical impairments and resulting limitations.

[3] The 2005 rating of 30% was a decrease in Ruiz's previous assessment of 50% for these conditions. Tr. at 192.

In December 2014, Elizabeth Gamble, Psy.D., examined Ruiz. Tr. at 20. Dr. Gamble remarked that the results of testing did not provide a valid estimate of Ruiz's overall cognitive functioning because he did not give his full effort during testing. *Id.* Dr. Gamble observed that Ruiz's higher-level, non-verbal problem solving fell within the superior range. *Id.*

After Ashley Weeks, M.S., examined Ruiz in January 2015, she issued a statement with E.J. Burgess, Psy.D., noting that Ruiz was cooperative and pleasant with a dysphoric mood and full affect. Tr. at 15. Ruiz reported difficulty being around others. Tr. at 15–16. The examiners found Ruiz fully oriented with a logical and coherent thought process and adequate memory. Tr. at 16. These consultants concluded that Ruiz could perform unskilled work and he may have trouble tolerating stress or relating to others. *Id.*

State agency consultants Lori Brandon-Souther, Ph.D., and Ken Wilson, Psy.D., evaluated Ruiz's mental health records in April 2015 and June 2015, respectively. Tr. at 16. Both reviewers assessed severe PTSD and depression. *Id.*

Ruiz testified that he cannot work because of memory loss, which is worsening, and migraine headaches, which he experiences one to two times a week. Tr. at 46. Ruiz also described auditory hallucinations and nightmares. Tr. at 50.

Ruiz testified that he has pain in his back and neck. Tr. at 51–52. He has received injections for his left shoulder pain and he wears braces for his constant knee pain. Tr. at 53–54. Ruiz estimated he could lift 15 pounds. Tr. at 57.

He stated he does not like to leave his house or being around other people, and he has few friends. Tr. at 51. He spends most of his day lying down. Tr. at 57.

### D.     Mental Impairments

Ruiz contends that ALJ Lucas erred in determining the RFC by failing to account for his mental limitations. The Commissioner asserts, and the court agrees, that ALJ Lucas properly determined that Ruiz's mental health conditions had improved and no longer presented a limitation on his functional abilities.

Ruiz contends that his VA disability rating confirms the severity of his mental impairments. He points out that he has a 50% disability rating from the VA for PTSD. Ruiz also notes the medical evidence shows he had impaired memory, depressed mood, difficulty sleeping and socializing, and auditory hallucinations. Yet ALJ Lucas found no severe mental impairment and the RFC reflects no limitations to account for his mental health symptoms.

As provided by 20 C.F.R. § 404.1504 and further explained in Social Security Ruling ("SSR") 06-03p, "a determination made by another agency that [the claimant is] disabled or blind is not binding on" the Social Security Administration. 20 C.F.R. § 404.1504. Rather, "the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." SSR 06-03p.

The Fourth Circuit has addressed the value of disability findings by other agencies. *Bird* v. *Comm'r of Soc. Sec. Admin.,* 699 F.3d 337 (4th Cir. 2012). It noted that while not binding on the SSA, "another agency's disability determination 'cannot be ignored and must be considered.'" *Bird*, 699 F.3d at 343. The Fourth Circuit observed that often times the disability assessments of other agencies such as the VA serve the same governmental purpose of providing benefits to persons unable to work, evaluate a claimant's ability to perform full-time work, analyze a claimant's functional limitations, and require extensive medical documentation to support the claims. *Bird*, 699 F.3d at 343. The Fourth Circuit therefore concluded that "in making a disability

determination, the SSA must give substantial weight to a VA disability rating[.]" *Id.* Assigning less weight to another governmental agency's disability determination may be warranted "when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.; see also Woods* v. *Berryhill,* No. 1:16-CV-58-MOC-DLH, 2018 WL 1954475 (4th Cir. Apr. 26, 2018) (extending *Bird's* holding to state agency disability determinations).

ALJ Lucas considered Ruiz's mental health conditions. Tr. at 14–17, 20–21. ALJ Lucas discussed his diagnoses of migraine headaches, dementia/memory loss, PTSD, and major depressive disorder. Tr. at 14. But she found that these conditions have not led to significant functional limitations for Ruiz. Tr. at 15.

ALJ Lucas observed that there was no evidence of any substantial lasting effects resulting from Ruiz's February 2015 infarction. *Id.* Although testing showed a brief period of memory loss following his stroke, this symptom resolved in less than 12 months. *Id.*

ALJ Lucas further noted that Dr. Bolger found little evidence of neurocognitive dysfunction in his June 2011 examination and testing. *Id.* And ALJ Lucas remarked that the record showed minimal treatment for headaches and did not corroborate a frequency of two to three times a week to which Ruiz testified. *Id.*

In addressing his PSTD and depression, ALJ Lucas found that Ruiz had received some formal mental health treatment. *Id.* But ALJ Lucas noted that Ruiz had responded well to treatment, consistently reporting improvement with medications. *Id.* And ALJ Lucas observed that mental status examination findings were generally unremarkable. *Id.*

ALJ Lucas discussed Weeks's examination and the assessment she made along with Dr. Burgess. Tr. at 15–16. Although he had a dysphoric mood, Ruiz had a full affect and presented as pleasant and cooperative. Tr. at 15. And Ruiz was fully oriented with a logical and coherent

thought process and adequate memory. Tr. at 16. Dr. Burgess and Weeks determined that Ruiz could perform unskilled work and thought he may have trouble relating to others and tolerating stress. *Id.*

But ALJ Lucas gave little to no weight to their opinions, concluding that they were vague, speculative, and grounded in Ruiz's statements, which were inconsistent throughout the record. *Id.* She noted that depression screens from 2015 and 2016 yielded negative results. *Id.* ALJ Lucas also observed that Ruiz took his medications only intermittently and, by January 2017, he had ceased his medications altogether. *Id.* Ruiz reported that medications helped treat his symptoms and he would take them on an as needed basis. *Id.* Despite a cessation of his mental health medications, treatment notes reflect that Ruiz was pleasant, processed discussions well, displayed a euthymic mood, and exhibited good judgment and impulse control. *Id.*

Although Drs. Brandon-Souther and Wilson diagnosed Ruiz with PTSD and depression, ALJ Lucas observed that the updated evidence showed his condition remained stable, both with and without medication. *Id.* So ALJ Lucas concluded that these assessments deserved little weight. *Id.*

ALJ Lucas also considered Ruiz's mental functioning under the four broad functional areas of the section 12.00 Listings. *Id.* She determined that Ruiz had no more than a mild limitation in understanding, remembering, or applying information, interacting with others, and maintaining concentration, persistence, or pace. *Id.* And ALJ Lucas found Ruiz showed no limitations in adapting or managing himself. *Id.* ALJ Lucas thus concluded that Ruiz's PTSD and depression were non-severe impairments. Tr. at 17.

ALJ Lucas also pointed out that Dr. Gamble's December 2014 consultative examination concluded that Ruiz had not given a full effort to testing. Tr. at 20. Consequently, she found that

8

test results were not a good indication of Ruiz's cognitive functioning. *Id*. She also noted that his higher-level, non-verbal problem solving was within the "superior" range. *Id.*

And ALJ Lucas specifically discussed the VA disability rating. Tr. at 21. ALJ Lucas found that the VA disability rating deserved little weight. *Id.* She noted the Fourth Circuit's decision in *Bird* allowed an ALJ to give less weight to another disability finding when the record demonstrated that such deviation was appropriate. *Id.* ALJ Lucas concluded that this case warranted a deviation from the substantial weight presumed due to the VA disability rating. *Id.*

ALJ Lucas explained the reason for deviating and according this disability decision little weight. *Id.* ALJ Lucas observed that the VA rating did not identify what medical or vocational evidence on which it relied. *Id.* So ALJ Lucas could not determine whether the record was similar or different from the evidence before her. *Id.*

ALJ Lucas also pointed out that the criteria used by the VA and SSA differ. *Id.* Physicians in the VA based their opinions on standards "specific to the job duties required for strenuous military work, not the functional abilities of the average worker." *Id.*

The record showed, and ALJ Lucas found, that Ruiz's mental health conditions had improved, he had ceased medications, and his more recent mental status examination were generally unremarkable. And ALJ Lucas concluded that these conditions were not severe impairments because they caused no more than a minimal effect on his mental functioning. As the Commissioner points out, ALJ Lucas did not find that Ruiz was cured of his PTSD, depression, or other mental impairments. But the evidence showed an improvement in his condition both with and without medications.

The evidence before ALJ Lucas, coupled with the lack of identification of the evidence on which the VA grounded the disability rating and a recognition of some differences between SSA and VA disability adjudication rule and regulations, warrants a deviation from the substantial weight generally given to other agencies' disability findings. Thus, substantial evidence supports ALJ Lucas's determination that Ruiz's VA disability rating was entitled to little weight. Finding no error in her consideration of Ruiz's mental health impairments, the court denies Ruiz's motion on this issue.

**E.  Step Five**

Ruiz also asserts that ALJ Lucas applied the incorrect Grid Rule at step five. The Commissioner contends, and the court agrees, that ALJ Lucas used the appropriate Grid Rule at step five.

As noted above, while a claimant has the burden at steps one through four, it is the Commissioner's burden at step five to show that work the claimant can perform is available. *Pass*, 65 F.3d at 1203 (citing *Hunter* v. *Sullivan*, 993 F.2d 21, 35 (4th Cir. 1992)). "The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (Grids) or by calling a vocational expert [("VE")] to testify." *Aistrop* v. *Barnhart*, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566)). The Grids are published tables that take administrative notice of the number of unskilled jobs at each exertional level in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a).

When a claimant suffers solely from exertional impairments, the Grids may satisfy the Commissioner's burden of coming forward with evidence on the availability of jobs the claimant can perform. *Grant* v. *Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). When a claimant (1) suffers from a non-exertional impairment that restricts his ability to perform work of which he is

exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. *See Walker*, 889 F.2d 47, 49 (4th Cir. 1989); *Hammond* v. *Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985); *Cook* v. *Chater*, 901 F. Supp. 971 (D. Md. 1995); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h).

The Regulations permit testimony from a VE to determine "whether [a claimant's] work skills can be used in other work and the specific occupations in which they can be used[.]" 20 C.F.R. §§ 404.1566(e), 416.966(e). For a VE's testimony to be relevant, an ALJ's hypothetical question must represent all of a claimant's substantial impairments. *Walker*, 889 F.2d at 50; *Burnette* v. *Astrue*, No. 2:08-CV-0009-FL, 2009 WL 863372, at *4 (E.D.N.C. Mar. 24, 2009) (relevant hypothetical question should adequately reflect claimant's RFC and fairly set out a claimant's limitations). If limitations are omitted, the VE's testimony is of limited value, and may not constitute substantial evidence. *See Johnson*, 434 F.3d at 659 (citing *Walker*, 889 F.2d at 50).

Ruiz contends that considering his age, education, work experience, and RFC, Rule 201.14 would direct a finding of "disabled" at step five. But his argument is unpersuasive for several reasons. First, as noted above, ALJ Lucas decided this case at step four and so the Grids, used at step five, do not apply.

Ruiz also premises his argument on a finding that he is limited to unskilled work. Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568.

In support of his argument, Ruiz notes that Dr. Souther found that Ruiz could perform unskilled work. Weeks limited Ruiz to simple, routine, repetitive tasks much like, but more

11

restrictive than, unskilled work. *See Weldon* v. *Colvin*, No. 7:17-CV-00015-BO, 2016 WL 1060241, at *3 (E.D.N.C. Mar. 14, 2016) (noting that simple, routine, repetitive work is a narrower category, with greater limitations, that unskilled work). And Dr. Wilson concluded that Ruiz could follow short, simple two and three step instructions.[4]

But although these consultants assessed these limitations, ALJ Lucas gave little or no weight to their opinions. Tr. at 16. And she did not include these restrictions, or any mental limitations, in his RFC determination. In deciding this case at step four, ALJ Lucas determined that Ruiz could perform his past work as a general operations agent and security officer, both of which the DOT categorizes as skilled occupations. Tr. at 22.

Because ALJ Lucas declined to limit Ruiz to unskilled work and found that he could perform his past relevant work, the sequential analysis concluded before step five. Thus, the Grids do not apply. So the court reject Ruiz's argument on this issue because it lacks merit.

### III. Conclusion

For the forgoing reasons, the the court denies Ruiz's Motion for Judgment on the Pleadings (D.E. 26), grants Saul's Motion for Judgment on the Pleadings (D.E. 30), and affirms the Commissioner's determination. This action is dismissed. The Clerk shall close this case.

Dated: August 27, 2019.

*Robert T. Numbers II*
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE

---

[4] Ruiz appears to argue that this limitation is consistent with a Reasoning Code 1, which requires the ability to "[a]pply commonsense understanding to carry out simple one-or two-step instructions." DOT, 1991 WL 688702 (2008). But this was not Dr. Wilson's assessed limitation. A Reasoning Code 1 job does not necessarily conflate with unskilled work. *See Hardy v. Colvin*, No. TMD 11-02793, 2013 WL 4478025, at *4 (D. Md. Aug. 19, 2013). "Unskilled" addresses to the level of vocational preparation necessary to perform the job while the reasoning level ratings speak more to a job's simplicity. *Id.*

12